In the Matter of the MARRIAGE OF Shirley Fay LOUIS and Freddie Ray Louis.

No. 06–95–00059–CV.

Court of Appeals of Texas, Texarkana.

Argued Oct. 31, 1995.

Decided Nov. 9, 1995.

Timothy G. Boswell, Alexander & Boswell, Mineola, for appellant.

Jack W. Taylor, Mineola, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Freddie Louis appeals from a judgment of divorce, primarily claiming that the trial court erred in awarding Shirley Louis, his former spouse, future income from his separate property. He also claims that the trial court mischaracterized the house and lot which had been the parties' marital home as

Shirley's separate property. We conclude that the trial court made no error in the characterization of property but did err in awarding income from Freddie's separate property to Shirley. We therefore reverse that part of the judgment which divides the community estate and remand the case to the trial court for further proceedings consistent with this opinion.

The parties married in 1978 and divorced in 1994. Before their marriage, Shirley divorced a prior husband and was awarded as her separate property a house and lot. As part of Shirley's prior divorce settlement, she agreed to pay her former spouse $3,200.00. After that earlier divorce, and at a time when Shirley and Freddie were contemplating marriage, he gave her the money to pay her former husband, which she did.

In 1987, Freddie and his sister, Ophelia Ann Branham, jointly inherited a parcel of approximately six acres of land in Caddo Mills, Texas. In 1988, Freddie, Shirley, and Ophelia signed an agreement to lease with the United States Postal Service, agreeing to finance and construct a building on 0.7 acre of the land, which they would then lease to the Postal Service to be used as a post office. In 1989, the three individuals signed a single note in the amount of $152,264.53 to finance the building. The building was completed in 1989, and the Postal Service began making lease payments to the three individuals. The basic lease term of the agreement is ten years, with a lease rate of $24,600.00 per annum during this period. After the first ten years, there are three optional renewal periods of five years each. The first two renewal periods have annual lease rates of $33,210.00 and $41,400.00, respectively, and the rate for the final period is to be set at fair market value. At the time of trial, the balance remaining on the note financing the building was approximately $135,000.00.

In her original petition for divorce, Shirley requested reimbursement for community funds used to improve Freddie's separate estate. She also alleged that she had expended time and effort in such improvements. At trial, she requested that she be awarded a share of the future proceeds from the post office lease.

The trial court awarded Freddie and Shirley twenty-five percent each of the future lease proceeds. It held that in signing the post office lease agreement and financing note, Freddie, Shirley, and Ophelia had entered into a joint venture. The court found that the joint venture held a right to the proceeds from the lease contract. The court awarded each spouse an equal portion of the marital share of the future rental payments.

In various points of error, Freddie challenges the trial court's award to Shirley of a share of the future proceeds from the post office lease. He contends that there is no evidence, or alternatively, insufficient evidence to support the trial court's finding that the lease agreement with the post office is a joint venture. When reviewing the sufficiency of the evidence supporting a trial court's finding, the court of appeals must consider all of the evidence in the record and should set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Although a joint venture must be based on an agreement, this agreement may be implied. *Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex.1978). A joint venture must possess each of the following characteristics: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Id.; Crum & Forster, Inc. v. Monsanto Co.,* 887 S.W.2d 103, 145 (Tex.App.—Texarkana 1994, no writ). Although a joint venture is in the nature of a partnership, its operation is usually limited to a single transaction. *Harrington v. Harrington,* 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no writ). In determining whether there is sufficient evidence of a joint venture, the participation, activities, and objectives of the parties may all be considered. *Crum & Forster,* 887 S.W.2d at 142.

Freddie, Shirley, and Ophelia each signed all of the documents pertaining to the lease

transaction. Freddie and Ophelia both contributed land, which they owned as their separate property, to the venture. Shirley expended significant amounts of time and effort in preparing and managing the lease. All three signed the note, making them individually liable for its repayment.

■ The trial court held that because Shirley signed the lease agreement with the Postal Service, she had the same right to receive its proceeds as Freddie and Ophelia. The proceeds from the lease were to be divided among Ophelia, individually, and Freddie and Shirley, as marital partners. Her right to the proceeds of the transaction accrued only by virtue of her status as Freddie's spouse. During their marriage, all profits from the lease of his separate property became their community property. Tex. Fam.Code Ann. §§ 5.01(b), 5.22(a)(2) (Vernon 1993); *Moss v. Gibbs,* 370 S.W.2d 452, 455 (Tex.1963); *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 664 (Tex.App.—San Antonio 1990, no writ). Upon divorce, however, she had no further right to receive this rental income. There was insufficient evidence of an agreement among the parties to share profits with Shirley in her individual capacity.

We hold that there is insufficient evidence to support the conclusion that the parties had entered into a joint venture. We are not prepared to uphold a judgment based upon an inference absent some direct evidence that the parties intended to enter into a joint venture. The trial court erred in finding that the post office lease arrangement was a joint venture from which Shirley was entitled to receive proceeds following the divorce.

■ Although Shirley may not be awarded continuing income from the lease of Freddie's separate property following the divorce, she may be adequately reimbursed for her contributions of community assets to improve that property. *Heggen v. Pemelton,* 836 S.W.2d 145, 148 (Tex.1992); *Smith v. Smith,* 715 S.W.2d 154, 157 (Tex.App.—Texarkana 1986, no writ). She assumed community debt in the amount of the note given to finance the building. She will remain personally liable for this debt and may also be entitled to reimbursement for time and effort on behalf of the community which enhanced the value of Freddie's separate property. *See Jensen v. Jensen,* 665 S.W.2d 107, 109 (Tex.1984). Upon a redivision, Shirley's claims for reimbursement for her portion of the community estate's improvement to Freddie's separate property is measured by the enhancement in value to his separate property. *See Anderson v. Gilliland,* 684 S.W.2d 673, 675 (Tex.1985). And, should the trial court see fit, it may impose an equitable lien on the separate property of a spouse to secure the other spouse's right of reimbursement for community improvement to that property. *Heggen,* 836 S.W.2d at 146. Upon a retrial, the trial court will have various options in determining a just and right division of the community estate of the parties.

■ Freddie also challenges the trial court's finding that the house the parties occupied during their marriage was Shirley's separate property. As stated, Shirley obtained the house in a divorce settlement from a prior marriage.

On appeal, Freddie contends that his payment of the money owing on the house from Shirley's prior divorce settlement created a purchase money resulting trust in his favor. He argues that he and Shirley thereafter held the property as cotenants, each with a one-half interest in the house as their separate property.

In light of the testimony given at trial by both parties, the trial court could have concluded that the money was a gift. It therefore was not clearly wrong and unjust for the court to find that the house remained Shirley's separate property, and that Freddie never acquired any interest in it. *See Cain,* 709 S.W.2d at 176.

Because of the trial court's award to Shirley of an interest in the future proceeds from Freddie's separate property, we reverse and remand the cause to the trial court.