**Affirmed as Modified and Memorandum Opinion filed October 21, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00296-CV

## RICKY DON DUPREE, Appellant

### V.

## VIKKI YVONNE DUPREE, Appellee

**On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court Cause No. 233-618375-17**

## MEMORANDUM OPINION

Appellant Ricky Don Dupree appeals the trial court's Final Decree of Divorce signed following a bench trial. In two issues Ricky asserts the trial court abused its discretion (1) when it divided the marital estate; and (2) in granting a motion for new trial setting aside a default judgment. We conclude that the trial court did not abuse its discretion in dividing the marital estate, but abused its discretion in the judgment on unpaid temporary spousal support. We further conclude that the trial court's granting of the motion for new trial is not reviewable on appeal. We therefore modify

the trial court's judgment to reflect a judgment for $28,000 in unpaid temporary spousal support and affirm the judgment as modified.

## BACKGROUND

The parties were married on February 23, 1991, and separated on March 31, 2017. Appellee Vikki Yvonne Dupree filed for divorce and Ricky filed a counterpetition, alleging the marriage had become insupportable because of discord or conflict of personalities between him and appellee Vikki. At the time the parties filed their petitions there were no minor children of the marriage.

On May 18, 2017, the trial court signed a temporary injunction order titled, "Agreed Mutual Injunctions." The injunctions required the parties to refrain from, inter alia:

- Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties;

- Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty, realty, or intellectual property, and whether separate or community except as specifically authorized by this order;

- Making withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by order of this Court;

- Spending any sum of cash in the possession or subject to the control of either party for any purpose, except as specifically authorized by this order;

- Withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account, except as specifically authorized by this order; and

- Canceling, altering, failing to renew or pay premiums, or in any

2

manner affecting the present level of coverage of any life, casualty, automobile, or health insurance policies insuring the parties' property or persons.

On June 21, 2017, and again on March 8, 2018, Ricky was ordered to pay temporary spousal support of $2,000 per month.

The case was set for trial May 22, 2018. Vikki did not appear at trial and the trial court signed a default decree of divorce on June 6, 2018. On August 3, 2018, Vikki filed a motion for new trial in which she alleged that she did not receive actual notice of the court's default decree until July 22, 2018. Vikki averred that her failure to appear at trial was due to accident or mistake because she was without counsel on the date the case was set for trial and had filed a pro se motion for continuance but did not understand that a ruling on the motion was necessary to obtain a continuance. Vikki asserted a meritorious defense to the petition contending that no evidence was offered at trial of the valuations of the divided property. On September 11, 2018, the trial court signed an order granting Vikki's motion for new trial.

The trial court subsequently held a bench trial at which both parties and their respective attorneys testified.

Vikki testified that she filed for divorce because of infidelity. During the marriage Vikki worked odd jobs and held a job at Barstools Plus for several years. Her highest earnings from Barstools Plus were $14 per hour. Barstools Plus closed in June 2017, which left Vikki unemployed the remainder of 2017. In 2018 Vikki started two jobs but was unable to maintain those jobs due to epileptic seizures. At the time of trial Vikki was working at an "automotive place" earning nine dollars per hour.

In January 2018 Vikki experienced a "grand mal seizure" while driving her truck. Vikki's seizure caused her to have an accident, which totaled the truck.

3

Although Vikki paid insurance on the truck it was titled in Ricky's name. For that reason, Vikki testified she was unable to file an insurance claim on the truck, which was totaled. At the time of trial Vikki's medication had stabilized her epileptic seizures. Vikki's health insurance was discontinued at the time of the trial court's default divorce decree and Vikki was unable to obtain insurance on her own. When the parties separated they took their personal property with them. Vikki estimated the value of Ricky's personal property at $32,830 and estimated the value of her personal property at $1,440. The parties sold their home but Vikki did not receive any of the proceeds from the sale.

Vikki produced evidence that, despite the injunction against removal of funds from accounts, Ricky took two loans from his Textron Savings 401(k) account of $26,000 and $16,000. Vikki asked the court to compensate her for the amount Ricky withdrew in violation of the injunction. Vikki further produced evidence showing that, despite the injunction against disposing of assets, Ricky sold two motorcycles with a total value of approximately $13,000. Vikki testified that since the date of the spousal support order Ricky had paid only $2,000.

In testifying to his expenses Ricky testified that he bought a motorcycle after the divorce was filed and traded in another motorcycle and a truck. Despite the injunction against disposing of property while the divorce was pending, Ricky traded the motorcycle and truck without notifying Vikki. Ricky explained that because of the default decree that was set aside, Ricky thought the divorce was final. Ricky also sold a Pac-Man machine and two slot machines while the divorce was pending.

Ricky estimated his earnings in 2017 at $82,000. Ricky admitted he had debts he had stopped paying. Ricky also admitted he took out loans of $26,000 and $16,000 against his Textron Savings 401(k) account while the divorce was pending. Ricky admitted those loans were made in violation of the trial court's injunction.

4

Ricky admitted not paying ordered spousal support and testified that he did not intend to pay it.

The trial court signed a final divorce decree. This appeal followed. In two issues Ricky asserts the trial court abused its discretion in (1) dividing the community estate; and (2) granting a new trial after the default decree.

<b>ANALYSIS[1]</b>

## I. The trial court did not abuse its discretion when it divided the marital estate.

In the first portion of his first issue, Ricky contends that the trial court abused its discretion and failed to comply with Section 7.001 of the Family Code because the property division is not "just and right." *See* Tex. Fam. Code § 7.001.

### A. Standard of review

We review a trial court's division of community property for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *6 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *Id.* The law requires an equitable—not an equal—division of the community estate. *Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.).

The trial court may take into consideration many nonexclusive factors, such

---

[1] The Texas Supreme Court ordered the Second Court of Appeals to transfer this case to our court. Under the Texas Rules of Appellate Procedure, "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." Tex. R. App. P. 41.3.

as:

- The spouses' capacities and abilities;
- Benefits that the party not at fault would have derived from a continuation of the marriage;
- Business opportunities, education, relative physical conditions, relative financial conditions and obligations;
- Disparity in age, size of separate estates;
- The nature of the property;
- Disparity in income and earning capacity;
- Fault in the breakup in the marriage; and
- A spouse's dissipation or wasting of community assets in the estate.

*Murff*, 615 S.W.2d at 699; *see also Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998). No single factor controls. *Hamilton*, 2020 WL 6498528 at *5. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the division. *Critz v. Critz*, 297 S.W.3d 464, 469 (Tex. App.—Fort Worth 2009, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)).

Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error; instead, they are considered in assessing whether an abuse of discretion has occurred. *In re K.A.M.S.*, 583 S.W.3d 335, 341 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A party complaining about the trial court's property division bears the burden of showing that the division was so unjust that it constitutes an abuse of the trial court's discretion. *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.). Thus, to determine whether a trial court abused its discretion in dividing the community estate, we must determine (1) whether the trial court had sufficient evidence on

which to exercise its discretion and (2) whether the trial court acted reasonably in applying its discretion to those facts. *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.).

When, as here, the trial court does not sign findings of fact, we presume the trial court made all necessary findings to support its judgment if those findings are supported by the evidence. *Matter of Marriage of McCoy & Els*, 488 S.W.3d 430, 434 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When evaluating the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *Id*. With respect to factual sufficiency, we examine the entire record and set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*.

**B.    Because the record contains some evidence of a probative and substantive character supporting the trial court's property division, it was not manifestly unjust and unfair.**

In the final decree of divorce, the trial court divided the community property as follows:

Awarded to Vikki:

- A portion of retirement benefits in Ricky's Textron Savings 401(k) Plan, including 100% of the account balance as of September 25, 2019;

- A portion of retirement benefits in Ricky's Bell Helicopter Hourly Union Plan including 50% of the Plan as of September 25, 2019, together with any survivor benefits; and

- The 2014 Chevrolet Silverado, which had been totaled in a car accident.

7

Awarded to Ricky:

- The Textron Savings Plan except that portion awarded to Vikki;
- The Bell Helicopter Plan except that portion awarded to Vikki; and
- The 2016 Chevrolet Silverado and 2017 Harley Davidson.

The trial court further ordered judgment in the reconstituted estate, awarding Vikki $6,930, which represented half the value of the motorcycles Ricky sold in violation of the injunction. The court further required Ricky to reimburse medical expenses in the amount of $595. The trial court also rendered judgment for unpaid temporary spousal support of $34,000.

Ricky asserts on appeal the division of community property was unjust because the trial court awarded Vikki 100% of his Textron plan as of September 19, 2019, 50% of his Bell Helicopter pension plan, and a truck that was worth over $20,000 and had no debt. Ricky further complains that the judgment for unpaid spousal support was unjust because Ricky did not realize he was obligated to pay spousal support after the default decree was set aside.

The record reflects an even division of property with the possible exception of the Textron Savings Plan. The record reflects that, on September 19, 2019, the Textron Plan had a balance of approximately $49,000. Ricky had borrowed $42,000 against the plan while the divorce was pending in violation of the trial court's injunction. The trial court appropriately considered the unauthorized loans as dissipation or wasting of community assets in the estate. *See Murff*, 615 S.W.2d at 699. The record does not reflect that the trial court's division of the community estate was so disproportionate that it is manifestly unjust and unfair. We overrule the first portion of Ricky's first issue.

8

**II.    The trial court's order for temporary spousal support terminated on June 6, 2018 when the court signed the default divorce decree.**

Ricky further argues in his first issue that the award of spousal support was "unjust, based on the fact that there were no orders ordering [him] to pay spousal support after September 1, 2017." On June 21, 2017, the parties agreed to a temporary order in which Ricky agreed to pay temporary support to Vikki in the amount of $2,000 per month. On March 8, 2018, the associate judge modified the previous report requiring temporary spousal support of $2,000 per month beginning on March 1, 2017. On June 6, 2018, the trial court signed the default divorce decree. The default decree discharged both parties "from any and all further liabilities and obligations imposed by the temporary order." (CR 36)

On September 11, 2018, the trial court signed an order granting Vikki's motion for new trial and setting aside the default decree. No further order for temporary spousal support was signed after the default decree. In the decree signed December 13, 2019, the trial court awarded judgment for unpaid temporary spousal support based on the March 8, 2018 Associate Judge's Report in the amount of $34,000. This portion of the judgment was separate from the portion of the judgment dividing the marital estate.

Ricky asserts the trial court erred because his responsibility for temporary spousal support ended on June 6, 2018, when the default decree was signed.[2] Vikki responds asserting that the temporary orders survived after the motion for new trial was granted.

The trial court's order granting Vikki's motion for new trial stated that the "Default Final Decree of Divorce signed on June 6, 2018 should be and is hereby set

---

[2] Ricky also asserts that there was no further order for temporary spousal support after September 1, 2017. This assertion is not supported by the record.

9

aside and of no further force or effect." When a trial court grants a motion for new trial, the case is reinstated on the trial court's docket and will proceed to trial as though no trial had been previously conducted. *See Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) ("[W]hen the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over.").

In addressing Ricky's issue we look at whether the temporary support order continued after the default divorce decree was signed. The statutory authority for temporary support is section 6.502 of the Family Code, which provides for the granting of a temporary injunction or other temporary orders "for the preservation of the property and protection of the parties as deemed necessary and equitable" while a suit for dissolution of a marriage is pending. Tex. Fam. Code § 6.502(a). The former code section provided, "After a petition for divorce or annulment is filed, the judge, after due notice may order payments for the support of the wife, or for the support of the husband if he is unable to support himself, until a final decree is entered." Tex. Fam. Code § 3.59 (repealed by Acts 1997, 75th Leg., ch. 7, § 3, eff. April 17, 1997).

The parties have not cited, nor has our research revealed, authority construing section 6.502 of the Family Code in the context of whether temporary support orders survive an order granting new trial. In construing former section 3.59, the Dallas Court of Appeals reviewed the authority and concluded that, "Unless the prejudgment alimony order by express language requires continuation of payments after judgment and until further proceedings are concluded, a further order after judgment or on granting a new trial is necessary in order that the party charged with support may be specifically advised of the continuing obligation." *Ex parte Thompson*, 510 S.W.2d 165, 168 (Tex. Civ. App.—Dallas 1974, no writ). The court concluded that "an order granting a new trial does not automatically continue the

prejudgment alimony order or make it applicable retroactively to the period intervening after entry of the divorce decree." *Id.*

In this case, the associate judge's order for temporary spousal support did not expressly provide for the continuation of payments after judgment or until proceedings were concluded. The default divorce decree expressly discharged all further obligations for temporary support. Finally, no further order for temporary support was issued following the granting of Vikki's motion for new trial. We therefore conclude that Ricky's obligation to pay temporary spousal support ended on June 6, 2018, with the signing of the default divorce decree. *See Ex parte Thompson*, 510 S.W.2d at 168.

The record reflects that Ricky was obligated to pay temporary spousal support from March 1, 2017 through June 6, 2018, a total of 15 months, or $30,000. The record reflects that Ricky paid $2,000 in temporary spousal support while the case was pending. The trial court's judgment was for $34,000—or 17 months'— temporary spousal support. Therefore, at the time the temporary support order was discharged, June 6, 2018, the record does not support a judgment for $34,000, but it does support judgment for the lesser amount of $28,000.

Accordingly, we sustain the second portion of Ricky's first issue and modify the trial court's judgment to reflect a judgment for $28,000 in unpaid temporary spousal support.

## III. Ricky's issue challenging the trial court's grant of Vikki's motion for new trial is not subject to review in this direct appeal after retrial.

In Ricky's second issue he challenges the trial court's grant of Vikki's motion for new trial and order vacating the default judgment. Generally, however, an order granting a new trial within the trial court's plenary power is not subject to review either by direct appeal from that order or from a final judgment rendered after further

proceedings in the trial court. *See Cummins v. Paisan Constr. Co.*, 682 S.W.2d 235, 236 (Tex. 1984) (holding that the trial court's order setting aside a default judgment and granting a new trial was not reviewable on appeal); *Poff v. Guzman*, 532 S.W.3d 867, 868–69 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 208–09 (Tex. 2009) (orig. proceeding).

Ricky does not contend that any recognized exception to this general rule applies. *See Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985)) (noting that the supreme court recognized two instances when a Texas appellate court overturned the trial court's grant of a new trial: when the trial court's order was wholly void, and where the trial court specified in the written order that the sole ground for granting the motion was that the jury's answers to special issues were irreconcilably conflicting).

Because Ricky's issue is not reviewable in this appeal, we overrule his second issue.

## CONCLUSION

We modify the trial court's judgment to reflect an award of $28,000 for unpaid temporary spousal support and affirm the judgment as modified.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Wise, Bourliot, and Zimmerer.